UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL WANDRIE,

        Plaintiff,                  Civil Action No. 13-10570

    v.                            District Judge Thomas L. Ludington
                                     Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [8] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [9]**

Plaintiff Darryl Wandrie appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his application for disability insurance benefits and supplemental security income. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 8, 9). For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's decision. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 8) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 9) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

Plaintiff is a high school graduate. (Tr. 42.) He has maintained several jobs since 1995 including working as a material handler, machine and equipment operator, sales clerk, and solderer. (Tr. 43-48.) When he quit his job on October 1, 2008, he cited a poor relationship with his girlfriend and also back and left shoulder pain as reasons for his inability to sustain full-time work. (Tr. 48.) Plaintiff has not worked since this time although he has been actively looking for work. (Tr. 49.)

### A. Procedural History

On August 17, 2009, Plaintiff applied for disability insurance benefits and supplemental security income asserting that he became unable to work on October 1, 2008. (Tr. 160-68.) The Commissioner initially denied Plaintiff's disability applications on December 10, 2009. (Tr. 76, 77.) Plaintiff then requested an administrative hearing, and on April 15, 2011, he appeared with counsel before Administrative Law Judge Peter N. Dowd, who considered his case *de novo*. (Tr. 33-75.) In a July 7, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (*See* Tr. 27.) The ALJ's decision became the final decision of the Commissioner on December 11, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) Plaintiff filed this suit on February 11, 2013. (Dkt. 1, Compl.)

### B. Medical Evidence

The medical evidence in this social security case is limited, consisting of only 32 pages. (Tr. 235-67.)

On December 5, 2009, Dr. Asit Ray evaluated Plaintiff to assist the Commissioner in

determining whether Plaintiff was disabled. (Tr. 236-39.) During this evaluation, Plaintiff indicated that he stopped working because he "was not in agreement with the company and therefore he was let go." (Tr. 236.) Plaintiff's chief complaint was low back pain, but he reported no radiation to the low back and legs. (Tr. 237.) Plaintiff ambulated normally without any assistive devices. (*Id.*) He was able to fully squat with deep knee and hip bends and stood up independently. (*Id.*) Dr. Ray concluded that Plaintiff's cervical spine functioned within normal limits. (*Id.*) An examination of Plaintiff's lumbar spine showed some tenderness; however, there was no lumbar paravertebral muscle spasm or soft tissue tenderness. (*Id.*) Plaintiff was able to do a straight-leg raise to 80 degrees on either side without radicular pain. (*Id.*) In fact, Dr. Ray noted that "[Plaintiff] has no pain during the SLR even in the back." (*Id.*) A Patrick's test (a test to evaluate for sacroiliac disease) was negative bilaterally. (*Id.*) Dr. Ray's examination of Plaintiff's shoulders revealed no atrophy over the shoulder girdle. (*Id.*) Active and external rotation was also normal with no tenderness noted at the greater tuberosity. (*Id.*) Plaintiff's elbows, wrists and hands showed no abnormalities. (*Id.*) Dr. Ray concluded:

> Darryl Wandrie has been evaluated on 12/5/09. He presented with lower back pain. However his lumbar spine motion is perfectly normal. No neurologic deficits noted. No evidence of lumbo sacral radiculopathy. He is extremely agile. He is independent in his self-care and activities of daily living. He did not show any musculo skeletal deficits in relation to his back pain.
>
> Based on the history as well as examination I feel that Darryl Wandrie should be able to perform his usual and customary activities including his occupational duties with out any restrictions.

(Tr. 238.)

On February 1, 2010, Plaintiff visited a health care provider at McLaren Medical Management, Inc. (Tr. 248, 250.) Plaintiff's chief complaints were left shoulder pain and chronic

back pain. (Tr. 250.) The notes indicated that Plaintiff's pain was exacerbated by movement and was relieved by remaining still. (*Id.*) Plaintiff was prescribed Motrin and Flexiril and was instructed to follow-up in two weeks. (Tr. 248.)

On March 4, 2010, Plaintiff again visited a health-care provider at McLaren. (Tr. 246-47.) Although the record is difficult to read, it appears that Plaintiff again complained of back and left shoulder pain. (Tr. 246.) Attending physician, Dr. M. Ziccardi, ordered imaging of Plaintiff's lumbar spine during this visit which showed that his vertebral body heights and alignment were normal. (Tr. 249.) However, there appeared to be mild bilateral hypertrophic facet disease at L5-S1. (*Id.*) The pedicles were intact and there was no evidence of spondylolysis or spondylolisthesis. (*Id.*) The images also showed mild anterior spurring throughout the lumbar spine. (*Id.*) The conclusion was lumbar spondylosis; however, there was no evidence of spondylolysis or spondylolisthesis. (*Id.*) Plaintiff was given ibuprofen and was instructed to follow-up in two weeks. (Tr. 246-47.)

Following the administrative hearing, Dr. R. Scott Lazzara conducted a follow-up medical examination at the request of ALJ Dowd on May 19, 2011. (Tr. 253-57.) With respect to Plaintiff's musculoskeletal complaints, Dr. Lazzara concluded:

> There is no evidence of joint laxity, crepitance, or effusion. There is tenderness over the supraspinatus tendon and some diffuse tenderness in the lower back. Grip strength remains intact. Dexterity is unimpaired. The patient could pick up a coin, button clothing, and open a door. Heberden's nodes are present bilaterally.[1] The patient had no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting, and no difficulty standing on either foot. Straight leg raising is negative.

---

[1] Heberden nodes are "small hard nodules, formed usually at the distal interphalangeal articulations of the fingers, produced by calcific spurs of the articular cartilage and [are] associated with interphalangeal osteoarthritis." Dorland's Illustrated Med. Dict. 1299 (31 ed. 2007).

> There is no paravertebral muscle spasm noted.

(Tr. 254.) Dr. Lazarra also indicated that all range of motion testing, including for Plaintiff's back and shoulder, was within the normal range. (Tr. 254-57.) As a part of the evaluation, Dr. Peter Winston reviewed images of Plaintiff's left shoulder. (Tr. 252.) Dr. Winston concluded:

> I see no acute traumatic or intrinsic osseous abnormalities. Joint spaces are well maintained without marginal spurring, eburnation or erosive change along opposing surfaces. What can be seen at the lateral soft tissues appears free of calcium deposition.

(Tr. 252.)

Dr. Lazzara also completed an "Ability to Do Work-Related Activities (Physical)" Statement as a part of his evaluation. (Tr. 259-64.) He concluded that Plaintiff can frequently lift and carry up to 10 pounds and occasionally lift and carry up to 20 pounds. (Tr. 259.) Plaintiff can sit for two hours, and stand and walk for one hour at a time without interruption. (Tr. 260.) However, Dr. Lazzara concluded that Plaintiff is capable of sitting, standing, or walking for a full eight hour work day. (*Id.*) Plaintiff can frequently use his right hand for all tasks, and can frequently use his left hand for handling, fingering and feeling. (*Id.*) Plaintiff can occasionally use his left hand for reaching and pushing/pulling, and can occasionally use his feet for the operation of foot controls. (*Id.*) Plaintiff can occasionally perform postural activities (e.g., climbing, balancing, stooping, kneeling, crouching, crawling). (Tr. 262.) Dr. Lazzara concluded that Plaintiff should never be exposed to unprotected heights, extreme cold, extreme heat, or vibrations. (Tr. 263.) Further, Plaintiff should only have occasional exposure to moving mechanical parts, operating a moving vehicle, humidity and wetness, and dust, odors, fumes and pulmonary irritants. (*Id.*) Dr. Lazzara finally concluded that Plaintiff's limitations had not lasted, nor would they last, for 12 consecutive months. (Tr. 264.)

**C. Testimony at the Hearing Before the ALJ**

*1. Plaintiff's Testimony*

Plaintiff said he is able to take care of his own personal care needs including bathing and dressing. (Tr. 59.) He is also able to take care of his ex-girlfriend's 5-year old son. (*Id.*) He also takes care of his ex-girlfriend's dog when she is not home. (*Id.*) Plaintiff testified to cooking, washing dishes, washing clothes, doing yard work, and grocery shopping. (Tr. 60-61.)

Plaintiff explained that from 1995-96, he worked as a material handler, lifting approximately 10 pounds of glass at any given time. (Tr. 43.) Plaintiff indicated that he stood all day on this job. (Tr. 44.) From 1996-97, Plaintiff worked making magnets. This was a stand-up job where the maximum amount he was required to lift was one-half pound. (Tr. 44-45.) Plaintiff also did some soldering work which allowed him to sit down and lift a maximum of two pounds. (Tr. 44.) From 1997-98, Plaintiff worked stocking inventory and in the jewelry department at Meijer. (Tr. 45.) While stocking, he was required to lift items that ranged in weight from one-and-a-half pounds to 75 pounds. (*Id.*) From 1998-99, Plaintiff worked in the warehouse at K-Mart running the loading dock where the heaviest package that he needed to lift was 50 pounds. (Tr. 46.) Here, he stood and walked for most of the day. (*Id.*) From 2000-01, Plaintiff drove a forklift and bobcat. (Tr. 47.) From 2001-08, he worked at a recycling facility and continued to drive a forklift, bobcat, work on shears, do laborer work, and was a warehouse manager. (*Id.*) Plaintiff was lifting between 80-100 pounds, and was required to stand and walk most, if not all, of the day. (Tr. 48.) Plaintiff testified that the company finally ordered him a chair, so that he could sit down for part of the day. (*Id.*) Plaintiff stopped working at the recycling facility on October 1, 2008, because "of [his] back, and because of personal problems at home." (*Id.*) When asked to specify his personal problems, Plaintiff

stated "[b]asically, the one I live with, we didn't get along, and basically that was about it." (Tr. 49.) The ALJ asked which was more important, his back, or his personal problems. Plaintiff replied, "both" however, adding that he "resigned for personal reasons." (*Id.*) Since resigning, Plaintiff has not worked, but said he had continued to look for work up until a week prior to the time of the hearing. (*Id.*)

Plaintiff claims that his back pain

> comes from [his] lower back, where in [] your backbone you have a bunch of bones, there's nerves in between all of them; I got two that are pressing against a nerve, and then I have severe arthritis on top of that. That comes along with the injury. And every time I lift something, or sit, or stand for a long period of time, it just starts hurting. I have to readjust my body[.]

(Tr. 53-54.) Plaintiff testified that a chiropractor told him that he had a pinched nerve in his lumbar spine, but he could not remember the chiropractor's name and he did not have any written documentation pertaining to the diagnosis. (Tr. 54-55.) A doctor in Michigan, Dr. Ziccardi, told Plaintiff that his pain was exacerbated by movement and that it was relived by remaining still. (Tr. 67.)

In addition to the back impairment, Plaintiff stated that the cartilage was gone in his left shoulder. (Tr. 56.) Plaintiff testified that Dr. Ziccardi took x-rays of his shoulder and told him that the cartilage was gone. (*Id.*) Plaintiff indicated that his shoulder and back pain kept him on the couch watching television and doing some minimal job seeking. (*Id.*)

Plaintiff indicated that Dr. Ziccardi prescribed him Tramadol and Ibuprofen; however, he ran out about three months ago, and he has been taking Advil. (Tr. 56-57.) Plaintiff has a history of alcohol abuse, but he quit using alcohol in January 2011. (Tr. 57-58.)

Plaintiff felt that he was able to get along with people in a work setting. (Tr. 65.) Plaintiff

testified that exertion was the main problem with his last job, the standing and if they had him lift anything heavy, or anything that bounced him around—like the bobcat, or forklift. (Tr. 65.) Plaintiff also claims past employment where he was allowed to sit down, e.g., solderer, also hurt, "just not as bad[.]" (Tr. 66.) Plaintiff explained, "[a]nd it's been getting worse. I don't know if it's age, or what it pertains to, but it's been getting worse and worse as the years go by. It ain't been getting any better." (*Id*.)

### 2. *The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether someone with functional limitations approximating Plaintiff's would be able to perform any of Plaintiff's past work. (Tr. 70-74.) Specifically, the ALJ asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience who was capable of lifting a maximum of 20 pounds, repetitively lifting weights of 10 pounds or less, standing or walking at least six of eight hours, or sitting for at least six of eight hours in an eight-hour workday. (Tr. 72.) The VE testified that the hypothetical individual could perform the jobs of machine operator, sales clerk, equipment operator, and solderer. (*Id*.) The VE further testified that if the hypothetical individual needed a sit/stand option and needed to change positions at-will, that would impact the ability of the hypothetical individual to do Plaintiff's past relevant work as performed, however, the hypothetical individual would be able to perform the machine operator position as generally performed in the American economy. (*Id*.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act, disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727,

730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Dowd found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 1, 2008. (Tr. 22.) At step two, he found that

Plaintiff had the following severe impairments: (1) lumbar spondylosis and low back pain, (2) mild degenerative joint disease of the left shoulder with neck and shoulder pain, and (3) history of alcoholism to January 2011. (Tr. 23.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 24.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to

> perform a range of light exertional work activities . . . except as restricted by the following: the claimant is limited to occasional climbing of stairs, balancing, stooping, kneeling, crouching and crawling.

(*Id*.) At step four, the ALJ found that Plaintiff was able to perform his past relevant work as an equipment operator, sales clerk, machine operator, or solderer. (Tr. 26.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of his decision. (Tr. 27.)

### III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

### A. Substantial Evidence Supports The ALJ's Credibility Assessment

Plaintiff argues that the ALJ's evaluation of his credibility was not well-reasoned and was not supported by substantial evidence. (Pl.'s Mot. Summ. J. at 6.)

An ALJ's credibility assessment proceeds in two steps. *Baranich v. Barnhart*, 128 F. App'x 481, 487 (6th Cir. 2005). First, the ALJ determines whether the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce [the claimant's]

11

symptoms." 20 C.F.R. § 404.1529(c)(1); *Baranich*, 128 F. App'x at 487. If so, the ALJ then evaluates the "intensity and persistence" of the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1). At this second step, the ALJ should not reject a claimant's "statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. To the contrary: the regulations list other considerations that should inform the ALJ's credibility assessment. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight," S.S.R. 96-7p, 1996 WL 374186 at *2.

Within the above framework, an ALJ's credibility analysis warrants considerable deference: a court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility findings face an uphill battle."). Further, an ALJ's credibility analysis is subject to harmless error review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citing *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) with approval); *Carmickle*, 533 F.3d at 1162 ("So long as there remains substantial evidence supporting the ALJ's conclusions

on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." (quotation marks omitted and punctuation altered)).

Plaintiff claims that the ALJ erred in weighing the evidence. First, he claims that a McLaren record dated March 4, 2010 indicates that he complained of back pain and left shoulder pain. (Pl.'s Mot. Summ. J. at 11, Tr. 246.) Plaintiff says that this same record contains a statement that he made to a McLaren health provider informing them of his "pinched nerve." (*Id*.) Also, Plaintiff argues that the views of his lumbar spine taken the same day, give the impression of "lumbar spondylosis." (Pl.'s Mot. Summ. J. at 11, Tr. 249.) Plaintiff also points to a February 1, 2010 McLaren record that indicates back pain and left shoulder pain. (Pl.'s Mot. Summ. J. at 11, Tr. 250.) Plaintiff argues that these records support his hearing testimony regarding the pain he experiences in his back and left shoulder. (Tr. 53-56.)

While objective evidence is not the only factor relevant when making credibility determinations, it remains a "useful indicator" for an ALJ when evaluating the credibility of a plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.") Here, the Court concludes that the objective evidence supports the ALJ's credibility assessment.

The McLaren record noting a possible "pinched nerve" is a statement that Plaintiff made indicating that his previous chiropractor thought he had the condition. (Tr. 246.) Plaintiff was unable to remember the name of the chiropractor who treated him (apparently in the 1990's), and other than Plaintiff's self-reported statement, the ALJ noted the absence of any medical evidence

13

corroborating a "pinched nerve" in the record. (Tr. 23, 54-55.) The ALJ also noted largely normal physical examinations from 2009 through 2011. (Tr. 23, 25.) In December 2009, Plaintiff was examined by consultative physician, Dr. Asit K. Ray, who concluded that Plaintiff had no serious abnormalities. (Tr. 25, citing Tr. 237-38.) Dr. Ray opined that Plaintiff was "extremely agile" and was "able to perform his usual and customary activities including his occupational duties with out [sic] any restrictions." (Tr. 238.) Treatment records from office visits during 2010 showed no significant motor, neurological, or range of motion deficits. (*See* Tr. 23, 25, citing Tr. 246-51.)

ALJ Dowd also ordered a consultative examination to be performed after the hearing. (Tr. 74.) Dr. Lazzara opined that Plaintiff could frequently lift up to 10 pounds, occasionally lift up to 20 pounds, could sit for two hours without interruption, could stand or walk for one hour without interruption, and could sit, stand, or walk for eight hours in an eight hour workday. (Tr. 259-60.) Dr. Lazzara further concluded that Plaintiff had some postural limitations as well as other non-exertional limitations. (Tr. 261-63.) ALJ Dowd reasonably gave significant weight to Dr. Lazzara's opinion "that the claimant should be restricted in general to light[2] exertional work activities" because it is consistent with the evidence. (Tr. 25-26) The ALJ also noted that there were no medical opinions of record rendered by a treating doctor.[3] (Tr. 26.) Dr. Lazzara's opinion provides further

---

[2] 20 C.F.R. 404.1567(b) defines light work as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See also* 20 C.F.R. § 416.967(b).

[3] Plaintiff cites to case law and regulations concerning opinions from treating physicians (Pl.'s Mot. Summ. J. at 11-14), however, he does not identify or reference a single opinion from a

14

evidence supporting the ALJ's weighing of Plaintiff's credibility and RFC determination.

The ALJ also considered Plaintiff's reported daily activities and reasonably found them to be inconsistent with his allegations of extreme functional limitations–e.g., sitting or standing for 10-20 minutes, walking one to two blocks, lifting less than 10 pounds. (Tr. 25.) The ALJ cited Plaintiff's various chores (taking out garbage, putting away groceries, preparing meals, washing dishes, vacuuming, doing laundry), going to the store, taking his grandchildren to the park. (Tr. 221-23.) The ALJ also cited activities that Plaintiff testified to at the hearing, like providing child care to a five-year old child. (Tr. 25.) Plaintiff also testified that he was able to manage his personal care, rake the yard, shop, and do some cooking. (Tr. 59-61.) These activities provide additional evidence supporting the ALJ's weighting of Plaintiff's credibility and RFC determination.

Importantly, the ALJ noted that Plaintiff claims that he quit work in 2008 because of problems that he had with his back and for personal reasons. (Tr. 22-23, citing 48-49.) Plaintiff claims that he continued to look for work "everywhere" but no one was hiring. (Tr. 22-23, citing Tr. 49.) 20 C.F.R. § 404.1566c (providing that disability cannot be based on the lack of work in a particular geographic area, the hiring practices of employers, or the absence of job openings). Plaintiff admits that he was looking for work just one week prior to his administrative hearing, lending further support to the ALJ's conclusion Plaintiff had the ability to return to work. (Tr. 50.)

Plaintiff essentially asks the Court to re-weigh the evidence; however, this Court's scope of

---

treating physician. The Court's indepedent review of the medical evidence also did not reveal an opinion from a medical professional that would qualify under the definition. *See* 20 C.F.R. § 416.927(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). For these reasons, it is not necessary to further discuss Plaintiff's argument on this point, particularly because Plaintiff failed to identify what opinion the ALJ improperly weighed.

review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason. *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 981 (6th Cir. 2011). The Court finds no such compelling reason here.

### B.  The ALJ Presented an Accurate Hypothetical to the Vocational Expert

Plaintiff also claims that the ALJ gave the vocational expert an improper hypothetical by failing to account for Plaintiff's subjective complaints of pain. (Pl.'s Mot. Summ. J., at 9-11.) Plaintiff specifically complains that the ALJ did not take into account testimony about his inability to perform work-related tasks. (*Id*. at 10-11.)

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Parley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 632 (6th Cir. 2004). That said, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir.1987).

As discussed above, substantial evidence supports the ALJ's credibility determination. And, although Plaintiff does not make any specific arguments that challenge the ALJ's RFC determination aside from his credibility arguments, this Court has conducted an independent review of the record and concludes that substantial evidence also supports the RFC findings. For these reasons, the hypothetical to the vocational expert was proper.

### V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that the decision of the ALJ is supported by

substantial evidence and therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 8) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 9) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                s/Laurie J. Michelson  
                                                LAURIE J. MICHELSON  
                                                UNITED STATES MAGISTRATE JUDGE

Dated: September 26, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 26, 2013.

                                        s/Jane Johnson
                                        Deputy Clerk